**SO ORDERED.**

**SIGNED this 13th day of April, 2012.**



Janice Miller Karlin
United States Bankruptcy Judge
_____

In the United States Bankruptcy Court
for the District of Kansas

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Michael Gene Oliver and | ) | Case No. 05-40504 |
| Ann Lucile Francis, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| Michael Gene Oliver and | ) | |
| Ann Lucile Francis, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 11-07038 |
| | ) | |
| CitiMortgage, Inc. and | ) | |
| CitiCorp Trust Bank, FSB, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Memorandum Opinion and Order Granting Defendants'
Motion for Partial Summary Judgment

Plaintiffs Michael Gene Oliver and Ann Lucile Francis ("Olivers") filed this adversary proceeding against Defendants CitiMortgage, Inc. and CitiCorp Trust Bank, FSB, raising numerous claims concerning the Defendants' handling of payments made on the Olivers' mortgage during the pendency of their Chapter 13 plan. Included is a claim under Kansas law for the tort of outrage; it is the only claim upon which Defendants seek summary judgment.

The Olivers have not responded to the Defendants' Motion for Summary Judgment.[1] Because the motion is thus uncontested, local rules allow this Court to decide the motion without further notice pursuant to D. Kan. Rule 7.4(b). The Court has, of course, thoroughly reviewed the motion to determine if there is both a legal and factual basis for granting the motion, and finds that the alleged conduct of the Defendants is not sufficient to satisfy the threshold requirements under Kansas law to state a claim for the tort of outrage. For that reason, the Court grants partial summary judgment to Defendants.

Because this matter is related to the Olivers' bankruptcy proceeding, and the parties have consented to this Court entering a final order on the merits, the Court has jurisdiction to hear this case and enter a final order and judgment.[2]

---

[1] Doc. 47. D. Kan. Rule 6.1(d) requires any response be filed within 21 days; it has now been over 30 days since the motion was filed.

[2] 11 U.S.C. § 157(c)(2).

## I. Findings of Fact

The following findings of fact are based on the Statement of Uncontroverted Facts contained in Defendants' Memorandum in Support of their uncontested Motion for Partial Summary Judgment,[3] coupled with a review of the final Pretrial Order.[4] In December, 2002, the Olivers entered into a loan agreement with CitiCorp Trust Bank FSB, which is a part of CitiGroup, Inc., to finance the purchase of their home in Lawrence, Kansas. The Olivers gave a mortgage to CitiCorp Trust Bank FSB to secure the loan.

About three years later, the Olivers filed their Chapter 13 bankruptcy petition. Their original Chapter 13 Plan included a provision that placed numerous requirements on how Defendants should apply any payments received from either the Olivers or the Chapter 13 Trustee. These included requirements mandating Defendants apply any payments received from the Trustee only to prepetition arrearages and mandating how Defendants were to apply payments received directly from the Olivers postpetition. The provision also prohibited the Defendants from using "suspension accounts" or from seeking any fees or costs associated with the mortgage without prior Court approval. The Plan also

---

[3] Doc. 48.

[4] Doc. 45.

3

contained a liquidated damages clause for violation by the Defendants, as well as other provisions not relevant to the resolution of this summary judgment motion.[5]

The Olivers allege that the Defendants failed to properly apply payments in accordance with the provisions of their Chapter 13 plan. Specifically, the Olivers allege that the Defendants used suspense accounts to hold partial payments (until enough money was received to constitute the full payment required under the note) rather than applying the partial payments to the account immediately upon receipt. They contend this resulted in improper calculations of interest due. They also contend the Defendants misapplied payments received from the Chapter 13 Trustee and the Olivers by not correctly crediting those payments to prepetition arrearages and postpetition payments as they came due, respectively. The Olivers also claim that the Defendants failed to provide complete and accurate accountings of how the payments were applied, when requested, and that they intentionally filed pleadings with the Court containing an incorrect payment history.

---

[5] Defendants did not object to these plan provisions, but if they had, it is possible that objections might have been sustained to any provisions that effectively modified the rights of a holder of a secured claim on Debtors' principal residence, as prohibited by 11 U.S.C. § 1322(b)(5). Because it is not material to the issues presented here, I do not make any finding whether an objection would have been sustained.

The Olivers contend that the Defendants' actions led to several problems for them. First, they claim that the improper application of payments to interest and principal caused them to file incorrect tax returns from 2005 through 2010, because they deducted on those returns the wrong amount of interest paid on their home loan. Second, they claim that they have been denied credit or have been offered credit at a higher interest rate, and insurance at a higher rate, than they would have been able to obtain had the Defendants not "defamed and damaged" their credit (although they do not deny they were in bankruptcy, and had accumulated substantial debt that might also have impacted their credit rating). In the Pretrial Order, the Olivers have also indicated that they intend to testify at trial that Ann Francis Oliver suffered multiple strokes and heart damage which they believe were caused, at least in part, by the emotional distress caused by Defendants' conduct.

## II. Standard for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[6] In applying this standard, I view the evidence and all reasonable inferences therefrom in the light most favorable to the

---

[6] Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

5

nonmoving party.[7] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[8] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[9]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[10] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[11]

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a

---

[7] *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004).

[8] *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[9] *Id.* (citing *Anderson,* 477 U.S. at 248).

[10] *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[11] *Id.* (citing *Celotex,* 477 U.S. at 325).

6

rational trier of fact could find for the nonmovant.[12] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13]

Finally, summary judgment is not a "disfavored procedural shortcut." It is instead an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

### III. Analysis

The only claim at issue in this motion for partial summary judgment is based on the Kansas state law tort of outrage, otherwise known as intentional infliction of emotional distress.[15] In order to prevail on a claim for outrage, the Olivers must prove the following four elements:

> (1) the conduct of the defendants must be intentional or in reckless disregard for the plaintiffs;
>
> (2) the conduct must be extreme and outrageous;
>
> (3) there must be a causal connection between the defendants' conduct and the plaintiffs' mental distress; and

---

[12] *Id.* (citing Fed. R. Civ. P. 56(e)).

[13] *Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

[14] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] *See Valadez v. Emmis Communications*, 290 Kan. 472, 476 (2010) ("In Kansas, the tort of outrage is the same as the tort of intentional infliction of emotional distress."). Because this action is based upon state law, the Court will apply the substantive law of the State of Kansas. *See Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989); *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000).

7

(4) the plaintiffs' mental distress must be extreme and severe.[16] Before being allowed to proceed on this claim, the Olivers must meet two threshold requirements: (1) that the Defendants' conduct is so extreme and outrageous that recovery must be permitted, and (2) that the emotional distress suffered by them is so extreme that the law must intervene because no reasonable person should be expected to endure the distress.[17]

Kansas courts have further outlined the requirements for what constitutes extreme and outrageous conduct by noting that such conduct must go "beyond the bounds of decency and [is] to be regarded as atrocious and utterly intolerable in a civilized society."[18] Generally, the case must be "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"[19]

---

[16] *Taiwo v. Vu*, 249 Kan. 585, 592 (1991).

[17] *Id.*

[18] *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 257 (1999).

[19] *Neufeldt v. L.R. Foy Const. Co., Inc.*, 236 Kan. 664, 668 (1985) (quoting *Dotson v. McLaughlin*, 216 Kan. 201, 210 (1975)). In addition, the Kansas appellate courts have routinely relied upon the Restatement (Second) of Torts, which states: "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d (1965).

8

The Court finds the conduct complained of in this case clearly falls short of the requirements set forth by Kansas appellate courts for the tort of outrage. Essentially the Olivers allege that the Defendants failed to follow the special procedures and requirements they creatively imposed upon the Defendants through their Chapter 13 plan, as well as some requirements that were created by the terms of the note and mortgage, and then failed to fully and accurately disclose those failures when required to do so. While it is certainly possible that if proven, Defendants' actions may have violated the provisions of the Chapter 13 plan and/or federal law—as the Olivers allege in other counts, this Court must review the facts to determine whether they state a cause of action for the tort of outrage in Kansas.

A review of the Pretrial Order shows Plaintiffs accuse Defendants of the following conduct: misapplication of mortgage payments, violation of the terms of the note, security agreement and mortgage due to misapplication of payments and improper assessment of fees, failure to provide a requested payment history, defamation of their credit by wrongfully reporting the balance due on their note to credit reporting agencies, providing incorrect annual interest reports, causing them to file incorrect tax returns, failing to correct mistakes after being questioned, intentionally hiding their mistakes with "improper" payment histories, and filing false pleadings with the court (because of the misapplication

9

of payments, which caused all pleadings to contain the wrong numbers). Even if the Court were to assume as true all of the Olivers' allegations concerning the conduct of the Defendants, such conduct cannot be described as going "beyond the bounds of decency" nor can the conduct "be regarded as atrocious and utterly intolerable in a civilized society."[20]

A thorough review of the tort of outrage cases in Kansas shows that the types of conduct associated with successful outrage claims typically involve conduct as extreme as unlawfully restraining someone and falsely accusing them of committing a crime,[21] continually harassing an individual over the telephone and threatening them and their family with physical harm and financial ruin if a debt is not paid,[22] and asking inappropriate questions about a patient's sexual history and making inappropriate sexual contact with a patient while performing an independent medical exam to determine head and neck injuries resulting from an auto accident.[23] Although not all cases must fall under those

---

[20] *Id. See also Moore v. State Bank of Burden*, 240 Kan. 382, 388 (1986) (granting summary judgment against plaintiff who brought a tort of outrage claim, finding that the "most that can be said is that the Bank may have made an erroneous setoff of the Social Security funds against a legitimate indebtedness owed to the Bank. Such action was done only after consultation with counsel and without any showing of any intent to injure Mrs. Grubb, or a reckless disregard of her").

[21] *Taiwo,* 249 Kan. 585.

[22] *Dawson v. Associates Fin. Services Co.*, 215 Kan. 814 (1974).

[23] *Smith v. Welch*, 265 Kan. 868 (1998).

10

specific fact patterns, they illustrate the extreme nature of conduct that is required to state a claim for outrage in Kansas.

In light of that type of conduct, the Court finds that the acts Defendants are alleged to have committed, although egregious, clearly do not rise to the required level of being "atrocious and utterly intolerable in a civilized society." For that reason, the uncontested facts do not support the claim of outrage.

Obviously the Court does not condone Defendants' alleged conduct, if it is true they did what the Olivers accuse them of doing. But the Kansas Courts have made it abundantly clear that before a claim for outrage may proceed, the plaintiff must demonstrate extreme conduct on the part of a defendant. Deciding what conduct is sufficiently outrageous to support a claim is not an exact science, and the line as to what conduct satisfies this standard is admittedly blurred. That said, the Court finds the conduct alleged in this case is clearly insufficient to reach even the blurred edges of that line. The Kansas Courts have repeatedly rejected claims that involved conduct much more egregious than is alleged here.[24]

---

[24] *See Lovitt v. Board of County Com'rs of Shawnee County*, 43 Kan. App. 2d 4, 14 (2009) (finding that 911 operator's accusation that a child was lying about an auto accident and refusing to send assistance were insufficient to support a claim for outrage); *Ferguson v. Kellstadt*, 2008 WL 307488 (Kan. App. 2008) (finding that nurse practitioner's actions in informing a patient that the patient had advanced throat cancer without conducting any tests other than a visual inspection was insufficient to support a claim for outrage even though the "cancerous lesions" the nurse observed turned out to be food stuck to the patient's throat); *Moore v. State Bank of Burden*, 240 Kan. 382 (1986) (finding allegations that bank improperly

11

Because the Olivers have not met even the first threshold requirement for a claim of outrage, the Court need not address whether the second threshold requirement—that the Olivers experienced extreme emotional distress—has been met.[25]

## IV. Conclusion

The Court finds that the conduct of which the Olivers accuse the Defendants is insufficient to support a claim under the Kansas law for the tort of outrage, and thus grants summary judgment to the Defendants on Count VI,

---

setoff Social Security funds against a legitimate indebtedness were insufficient to support a claim for outrage); *Burgess v. Perdue*, 239 Kan. 473 (1986) (finding that physician's statement to deceased individual's mother that the State Neurological Institute "had her son's brain in a jar" after the mother had specifically declined to consent to an autopsy on her son's brain was insufficient to support a claim for outrage); *Neufeldt v. L.R. Foy Const. Co., Inc.*, 236 Kan. 664 (1985) (finding that defendant's criminal act of telephoning plaintiff's business to falsely advise a sheriff had an arrest warrant ready to serve due to an insufficient funds check, and that a sheriff was looking for the plaintiff to arrest him was insufficient to state a claim for tort of outrage); *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267 (1983) (finding plaintiffs did not state a claim for intentional infliction of emotional distress against hospital who informed them that their daughter was dead when she was actually at a different hospital); and *Bradshaw v. Swagerty*, 1 Kan.App.2d 213 (Kan. App. 1977) (finding defendant's use of epithets, calling plaintiff, a young black man, a "nigger," a "bastard," and a "knot-headed boy," did not state a claim for the tort of outrage).

[25] *See Hanrahan v. Horn*, 232 Kan. 531, 537 (1983) (finding it is unnecessary to address the second threshold requirement concerning the severity of the emotional distress if the first requirement concerning the nature of the conduct is not met). So although much of Defendants' motion centers around the fact that Plaintiffs endorsed no expert witness to support a causal link between the conduct alleged and the damages claimed, the Court need not consider that issue because Plaintiffs have failed to even meet the first threshold requirement of severity. *See Lovitt v. Board of County Com'rs of Shawnee County*, 43 Kan. App.2d at 14 (holding that plaintiff's own "propter hoc observations [regarding cause of son's damages] do not establish causation" and the conditions claimed by plaintiff are not conditions that would be apparent to the average lay person, and thus an expert witness would be necessary to establish causation").

12

which is contained in the Olivers' seventh theory of recovery in the Pretrial Order.[26]

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Partial Summary Judgment is granted. Judgment will be entered in favor of the Defendants as to Olivers' seventh theory of recovery. The Olivers' remaining claims will be tried on the Court's stacked docket, May 10-11, 2012.

###

---

[26] Doc. 45, ¶ 7.7.